## Ridge Turnpike *against* Stoever.

The Ridge Turnpike Company have the right, under their incorporating Act of the 30th of March 1811, to erect toll-houses at their gates for the accommodation of their toll-gatherers within the limits of the road.

ERROR to the District Court for the city and county of *Philadelphia.* ·

This was an action of trespass *quare clausum fregit* by Frederick Stoever against the Ridge Turnpike Company, for breaking and entering his close, breaking his fence, cutting down trees, &c. and erecting a stone messuage and privy so as to obstruct the free ingress and egress of the plaintiff, &c.   The defendant pleaded not guilty.

The Ridge Turnpike Company was incorporated by Act of Assembly, passed on the 30th day of March 1811, with authority to occupy the bed of the old road from Vine and Tenth streets to Perkiomen Bridge, making a road not less than forty, nor more than sixty feet in width; twenty-four feet in breadth; to be of stone or gravel, with a summer road at the side at such places as would admit of it.   They were not allowed to enter on lands or enclosures beyond the bounds of the old road, without the consent of the owners, though they might purchase real estate necessary for the prosecution of their works.   They were authorized to erect such gates or turnpikes upon and across the road as were necessary, and to appoint toll-gatherers to collect the tolls.   The road was laid out fifty feet wide.

The trespass complained of was the erecting a toll-house at the toll-gate within the limits of the fifty feet occupied by the road, in front of, and adjoining a lot of ground belonging to the plaintiff. There had been originally a frame building, thirty or thirty-five feet in front, without a yard, but in 1836 the Company erected a new one, of stone, and of larger dimensions, and enclosed by a fence, with a yard or curtilage adjoining, all within the road.   This suit was brought in 1837.

By a Supplementary Act passed the 27th of May 1840, the Company were authorized to erect within the limits of their road, at any of their gates or turnpikes, any toll-house or dwelling-house for the use and accommodation of the toll-gatherers, with certain provisions as to its extent, and the breadth of the stone part of the road there; its proximity to buildings on the adjoining land, and their rights within the limits of a borough, and other matters.

The defendants contended that the plaintiff could not maintain

[Ridge Turnpike Company v. Stoever.]

trespass because he was not in possession, having leased the premises, by parol, to a tenant, at the time of the supposed trespass, for five years.  The plaintiff alleged that this lease did not embrace the *locus in quo*, and that he was in possession of it.  The principal dispute, however, was whether the Company had a right, by their charter, to make this improvement for the accommodation of their toll-gatherers.  The court below was of opinion that the Company had not such a right.  On the question of possession there was much parol evidence, and the court left it to the jury, as they did the amount of damages.

Errors assigned :

1. The court erred in charging the jury that the Act of Assembly authorizing the incorporation of the Ridge Turnpike Company gave that company no right to erect a house for a toll-gatherer at the toll-gate in question, and within the bounds of their road.

2. In not charging the jury that under the said Act of Assembly the Ridge Turnpike Company had the right to erect a toll-house by the toll-gate in question, of a size reasonably sufficient to accommodate the toll-gatherer as a residence, and within the bounds of their road.

3. In charging the jury that it was a question entirely for them on the evidence, whether the tenant of the plaintiff (Brower) had or had not the lease of the lot in front of which the toll-house was erected, to the middle of the road; whereas the court should have charged the jury that the lease of the said lot carried with it the plaintiff's right to the middle of the road, unless the contrary was expressly stipulated; and that thus the right of possession at the time of the institution of this suit, was in Brower, and not in the plaintiff.

4. In charging the jury that the proof of the former payment of $20 a year by the defendants to the plaintiff was any recognition of the plaintiff's right to the fee of the ground on which the toll-house, &c. stand.

5. In charging the jury that they should or might give more than the actual damages proved by the breaking of the plaintiff's close, &c.

*Gerhard* and *Mallery*, for plaintiff in error, contended :

1. That the possession of the *locus in quo* was not in the plaintiff at the time of the institution of the suit, and therefore he could not maintain trespass *quare clausum fregit*.  The plaintiff's paper title was not shown; but merely that he had possession.  If so, his right did not extend beyond the line of the road, but was bounded by it.  If his right of soil did extend to the middle of the road, the lease carried it all to the lessee.  The presumption is, that waste land adjoining a road belongs to the owner of the land, as well when he is a leaseholder as a freeholder.  7 *B. & C.* 304, (14 *E. C. L.* 50); 2 *Stark. Rep.* 463, (3 *E. C. L.* 433).  In

7 *Taunt*. 39, it was held that, *primâ facie*, the presumption is, that the soil of the highway to the middle belongs to him in whom is vested the adjoining close.   It cannot be said that the lease, not being in writing, constituted only a tenancy at will, and was determined.   The court inclines against leases at will, holding them to be tenancies from year to year.   2 *W. Bl.* 1171 ; 8 *T. R.* 3 ; 4 *Taunt*. 128 ; 5 *T. R.* 471 ; *Co. Lit.* 53, *b note*, 57 *a* ; 23 *Peck.* 104.   Nor is the possession of the tenant at will determined till notice or some act of the lessor.

2. The power to erect toll-houses, though not expressly given, is impliedly vested, as being necessary to the exercise of the privileges conferred and duties imposed by the Act of Assembly.   All our turnpike Acts are clothed in similar language, and under all this power has been uniformly exercised.   The Act authorizes gates to be erected, and toll-gatherers to be appointed.   How are they to collect the tolls, by night and by day, in all seasons and weather, if they are not to have houses for shelter ?   They can only collect the tolls at the gates—they cannot sue for them, as was decided in 2 *Penn. Rep.* 462.   Even their right to stand in the road is only derived from implication.   The principle is well settled, that where the law gives a thing to one, it impliedly gives whatever is necessary for taking and enjoying it (*Co. Lit.* 56) ; and the same principle extends to charters (11 *Pet.* 597).   There are powers incidental to corporations, (*Ang. & Ames on Corp.* 1), and the intention of the makers of statutes is to be regarded.   15 *Johns.* 380 ; 2 *P. Wms.* 209.   The case of *Fisher* v. *Coyle*, (3 *Watts* 408), was relied on by the court below ; but it does not rule this case.   There the company had abandoned the toll-house, and rented it out.   This was held to be out of their power.   The rest was but an *obiter dictum*.   But the case, 9 *Peck*. 109, was this very case, and it is the only one to be found on the point.   There, after argument and full consideration, the Supreme Court of Massachusetts, under an incorporation similar to the present, held the right to pass, though not expressly conferred by the charter.

3. The Judge erred in relation to the damages, allowing the jury to go beyond the pecuniary loss to the plaintiff.   3 *Whart.* 316 ; 2 *Stark.* 813 ; *Baldwin* 144.

*Earle* and *C. Ingersoll, contra.*

1. There was evidence that the defendants formerly paid rent to the plaintiff for the toll-house, and not to Brower, though that was contested.   It was properly left to the jury as a question of fact, whether this was the case ; and the jury have found it was, and that the actual possession of the *locus in quo* was in the plaintiff.

2. Had they a right to erect this new toll-house, taking 73 feet more than they formerly had ?   We contend they had not.   The old toll-house was sufficient.   Besides, the toll-house need not be

[Ridge Turnpike Company v. Stoever.]

on the road; the company have power to buy land alongside of it, and there is sufficient competition among owners to sell their lands. The Act gives power to establish gates, but not toll-houses. The supplementary Act of 1840, shows they had not the power before. If they have the power, they might build in Tenth street above Vine, and shut out the occupiers of dwelling-houses from ingress to the road. The case of *Fisher* v. *Coyle*, (3 *Watts* 407), decides the point in controversy, and was that by which the court below were guided; and the Act of Assembly was in the same language, which is used in the Act of 30th of March 1811.

3. As to the damages, the court left that to the jury, cautioning them against giving more than compensatory damages.

The opinion of the Court was delivered by

Sergeant, J.—On the principal subject of contest in this case, whether the Turnpike Company, under the Act of the 30th of March 1811, possessed the right to erect toll-houses at their gates for the accommodation of the toll-gatherers, within the space of 50 feet comprised by the lines of the road, we entertain no doubt. We are of opinion, that although not expressly mentioned, it is a power that necessarily flows from the provisions of the Act of incorporation. It is not easy to see how the business of collecting the tolls, and performing other duties at the gates, could be conveniently conducted without houses for the accommodation of the toll-gatherers, especially as it has been decided, in *Turnpike Company* v. *Brown*, (2 *Penn. Rep.* 462), that the only mode of collecting the tolls, is to demand and receive them at the gates, and they cannot be recovered by action. The company are expressly authorized and required to appoint toll-gatherers to attend at the gates to collect and receive the tolls appointed, and their constant attendance at all hours, and at all seasons, is indispensable for the accommodation of the public in passing along the road. And this cannot be properly done without houses there to shelter them and their families. It is true the company has the power to purchase ground adjoining the road from the owners; but it would not be so convenient for travellers and the public, to have the toll-gatherer's residence remote from the road; and the ground might be refused or set at an exorbitant price, and, moreover, would be a needless expense. For gates cannot be erected without obstructing the road by a fence or bar across, so as to compel travellers to turn up and pass through the gates, and that portion might as well, so far as respects the use of the summer roads, be occupied by a building as by a fence or bar. It has, we believe, been the constant usage on our turnpikes, to erect the toll-houses at the gate, within the road, so as not, however, to interfere with the stone or gravel part of the road. The adjoining owner is not thereby deprived of any useful right, since the whole 50 feet, and even more, were long since laid out by the commonwealth as a

[Ridge Turnpike Company v. Stoever.]

great public highway in the first instance, and afterwards authorized to be turnpiked. The commonwealth had unquestionably a right to grant this power expressly, and might do so impliedly, as necessary to the taking and enjoying the things granted. What is said on this subject in *Fisher* v. *Coyle*, (3 *Watts* 407), and was the authority that governed the court below in the present instance, was not the point of that case. The decision there was, that the right of the company to build a toll-house within the road for the occupation of its toll-gatherers, would not justify them in renting it for other purposes unconnected with the road; and in this we entirely concur. But so far as such houses are for the accommodation of the toll-gatherers themselves, they stand on different principles. This very point came up in the Supreme Court of Massachusetts, in the case of *Tucker* v. *Tower*, (9 *Peck* 109); and no authority to the contrary has been produced. The court there held, that without any express authority in the Act, the Turnpike Company may place a toll-house at or near the gate, within its limits, for the accommodation of the toll-gatherer, provided the highway be not too much straitened. The court say, a house thereon for the residence of the toll-gatherer, is certainly within the reasonable purposes and intent of the legislature, to prevent the delay to passengers which would occur if his dwelling-house should be at a distance. No authority was given by the Act to appropriate any land without the exterior side lines of the road, so that if the proprietor of the adjoining land should refuse to sell a house-lot, or demand an extravagant price for it, the company and the public might be put to great inconvenience. The owner has the right of soil, but it is subject to the easement taken for the public use, and it is necessary to the enjoyment of the easement that there should be a toll-house. These remarks apply to the case before us, and we fully concur in them.

The supplementary Act of 1840 must therefore be considered as merely an Act to explain the doubts that had been entertained, and not as doing away the legitimate effect of the Act of 1811. It contains, moreover, new restrictions as to the mode of subsequently exercising the right by the company, so as not to prejudice the public or individuals.

This decision renders it unnecessary to examine the other questions presented, it being unimportant whether the plaintiff was to be considered in the actual possession of the *locus in quo* or his lessee, or as to the direction on the subject of damages.

Judgment reversed, and *venire facias de novo* awarded.