# The Western Pennsylvania Railroad Company versus Johnston.

## Same versus Stewart.

1. If a railroad company executes a mortgage on its road, franchises, &c., and *afterwards* occupies land for its uses, and damages are assessed, it has no interest in such land on which the mortgage can operate, and a sale under the mortgage would not convey the title nor extinguish the lien for the damages.

2. A charter under the Railroad Act of 1849, gives a company the right only to *occupy* the land on which its road may be located, and it is merely an easement.

3. Such interest of a railroad company in land is not the subject of lien or sale under execution.

[Western Pennsylvania Railroad Co. *v.* Johnston.]

4. An interest which is the subject of a lien and execution, must be an interest in the land itself.

5. A judicial sale extinguishes liens not estates.

6. A landowner's title to damages is paramount to a mortgage given by a railroad company before the damages have been assessed, and paid or secured to be paid.

7. If a landowner allows a railroad company to construct a road and use it without payment or security, a waiver of the trespass is not a waiver of the damages in face of a prosecution of his claim to judgment.

8. Before payment or security the entry by a railroad company is tortious.

9. Though equity might estop an owner permitting a company to expend money by laying a track upon land for the use of its road, from regaining possession, it would not estop him from recovering damages. The company would not be permitted to hold land and money both.

10. The owner of the land occupied by a railroad company cannot be deprived of the compensation secured to him by the constitution, unless by his own discharge or dereliction.

11. The sale of a railroad under a mortgage before the damages of the landowner were paid or secured, will not divest his right to recover compensation for the occupancy of his land from the purchaser under the mortgage.

October 29th 1868.  Before THOMPSON, C. J., READ, AGNEW, SHARSWOOD and WILLIAMS, JJ.

Writs of error to the Court of Common Pleas of *Westmoreland county* : No. 149, to October and November Term 1868.

1. The North Western Railroad Company was incorporated on the 9th of February 1853, under the general railroad law of 1849.

On the 1st of July 1856 the company, under the authority of an Act of Assembly, executed a mortgage on their whole road, all its rights, franchises, &c., to Andrew M. Eastwick and others, trustees, to secure bonds for $1,000,000, issued by the company. To August Term 1857, on the application of James R. Johnston, the defendant in error, viewers were appointed to assess damages sustained by him for the taking and occupying his land for the purposes of their road. The jury awarded him $500; judgment was entered on the award November 19th 1859.

Under proceedings in the Supreme Court, in equity, the railroad was sold on the 5th of July 1859 to William L. Hirst, Esq., in trust for the bondholders. By virtue of an Act of Assembly of March 22d 1860, the purchasers were incorporated under the name of the Western Pennsylvania Railroad Company; Mr. Hirst conveyed the property and franchises of the North Western Pennsylvania Railroad Company to the new company. By the 43d section of the act incorporating the Western Pennsylvania Railroad Company it is provided: "That all unpaid damages which have accrued to landholders by reason of the original construction of said road, shall remain for ever, until paid, a lien upon said road."

On the above judgment a scire facias was issued July 10th 1865, at the suit of Johnston against the North Western Pennsylvania Railroad Company with notice to the Western Pennsyl-

vania Railroad Company; in which a case was stated embodying the foregoing facts; and by which it was agreed that if the court should be of opinion that the plaintiff was entitled to recover against the Western Pennsylvania Railroad Company, judgment to be entered in his favor for $500 with interest, otherwise judgment to be entered for the Western Pennsylvania Railroad Company. The court entered judgment, October 3d 1865, for the plaintiff according to the case stated.

2. On the 21st of September 1857, judgment was entered in favor of John Stewart against the North Western Railroad Company on the report of viewers for $2458.33 damages sustained by him by reason of the taking and occupying of his land by the company. On the 29th of November 1867, Stewart issued a scire facias on this judgment in the same form as that issued by Johnston. The Western Pennsylvania Railroad Company filed an affidavit of defence, averring the same facts as those set out in the case stated above mentioned.

They also alleged that the lien of the judgment had been discharged by the sale under the mortgage and that plaintiff's remedy was upon the fund raised from the sale, &c.

The court entered judgment, October 3d 1868, for want of a sufficient affidavit of defence; it was liquidated at $4086.15.

The Western Pennsylvania Railroad Company took a writ of error in each case, assigning for error the entering judgment for the plaintiff.

*Stewart & Clark* (with whom was *H. C. Marchand*), for plaintiffs in error, referred to Act of February 19th 1849, § 10, Pamph. L. 83, Purd. 838, pl. 12; Dengler v. Kiehner, 1 Harris 41; Bor. of Easton's Appeal, 11 Wright 262; Steiner's Appeal, 3 Casey 316.

*E. Cowan* and *H. P. Laird*, for defendants in error.

The opinion of the court was delivered, January 4th 1869, by

AGNEW, J.—This is a *scire facias quare executio non*, issued by James R. Johnston, a landowner, upon a judgment obtained in 1857, against the North Western Railroad Company, now with notice to the Western Pennsylvania Railroad Company, claiming the rights and interests of the North Western Railroad Company in the land appropriated, for damages recovered in a proceeding to assess damages under the 11th section of the General Railroad Act of 1849.

The North Western Railroad Company executed a mortgage to trustees of its whole road and all its corporate rights, franchises and privileges in the year 1856, and before the proceeding and judgment for damages referred to. A sale took place by virtue of proceedings on this mortgage in the year 1859, through which

[Western Pennsylvania Railroad Co. v. Johnston.]

the Western Pennsylvania Railroad Company claims title to all the mortgaged premises by deed from William L. Hirst, Esq., the purchaser at the ·mortgage sale. The charter of the Western Pennsylvania Railroad, granted in 1860, also vests it with all the powers, privileges and authorities of the North Western Railroad Company, set forth in the act incorporating it, repeals the charter of the North Western Railroad Company totally, and confers on the Western Pennsylvania Railroad Company the right to sell its railroad and all the estate, real and personal, rights, credits and franchises which were of the North Western Railroad Company, providing, however, in a subsequent section, "that all unpaid damages which have accrued to landholders by reason of the original construction of said road shall remain for ever, until paid, a lien upon said road, and in case these cannot be amicably settled, the same shall be determined according to the provisions of the several railroad acts."

It is not stated in the case for the opinion of the court when the railroad company took possession of the lands of the plaintiff, nor does it appear that the company ever entered security for the claim to enable it to take a rightful possession. It is very clear, therefore, that if an entry to use and occupy the ground was ever made, there is nothing in the stated case to enable us to infer an entry, at least before the proceeding to assess the damages. In this view the North Western Railroad had no interest or claim in the land in question upon which the previous mortgage could operate, and the sale under it neither conveyed the subsequently acquired title, nor extinguished the lien, if any, obtained for the damage. This might be a sufficient answer to the argument of the plaintiff in error, but as the case has been put upon the ground of an extinguishment of the lien of the judgment for the damages, by the sale under the mortgage, it will be necessary to examine the nature of the interest acquired by the North Western Railroad in the land appropriated under its charter, and how far it is the subject of the lien of a judgment.

This charter is founded upon the General Railroad Act of 1849. Unlike the laws under which the state constructed her public works, and by virtue of which she took a fee-simple estate in the land, the Act of 1849 confers only a right to survey and locate the route for a railroad, and to enter into, and upon, and *occupy* all land on which its railroad, depots, &c., may be located, with the proviso, "that before such company shall enter upon or take possession of any such lands or materials, they shall make ample compensation to the owner or owners thereof, or tender adequate security therefor.

The 11th section, which provides for the assessment of the damages, restates substantially the nature of the use or occupancy in the same way. The character of the interest of the corpora-

tion in the land so taken and used for railroad purposes is thus clearly set forth, in the law itself, but it has also received judicial recognition in numerous cases. It is an easement merely upon the land, a right of way or passage, with such an occupancy as is necessary to give this right its effect; that is, in constructing, repairing and using the works adapted to the purpose of passage: Lance's Appeal, 5 P. F. Smith 26; Spear *v.* Allison, 8 Harris 204; Shamokin Valley Railroad Co. *v.* Livermore, 11 Wright 468; Haldeman *v.* Pennsylvania Railroad, 14 Wright 436; Mayor of Allegheny *v.* Ohio and Pennsylvania Railroad, 2 Casey 360–61. This being the nature of the interest acquired by a railroad company in land appropriated for the use of its railroad, a mere easement or right of passage for a public purpose, it is a settled principle in our law that this interest is not the subject of a lien or a sale under execution. Ammant *v.* Turnpike R. Co., 13 S. & R. 210, the leading case, was decided when there was no remedy, even by sequestration: Ridge Turnpike Co. *v.* Stoever, 2 W. & S. 548; Leedom *v.* Plymouth Railroad Co., 5 Id. 265; Susquehanna Canal Co. *v.* Bonham, 9 Id. 27; Spear *v.* Allison, 8 Harris 200; Plymouth Railroad Co. *v.* Colwell, 3 Wright 339; Steiner's Appeal, 3 Casey 315. The interest which is the subject of a lien and execution must be an interest in the land itself: Morrow *v.* Brenizer, 2 Rawle 188; Thomas *v.* Simpson, 3 Barr 69. A devise of land to children provided the father shall have the privilege of living thereon during his life, confers no estate on the father subject to judgment and execution: Calhoun *v.* Jester, 1 Jones 474. So a mere lease for years is not the subject of lien, but may be sold as a chattel: Krause's Appeal, 2 Whart. 398; Dalzell *v.* Lynch, 4 W. & S. 255: nor is a mere legal title, 1 Harris 478.

From these principles the result is clear that the judgment of James R. Johnston for his damages, was not a lien in the ordinary sense, and his claim was not liable to be divested by the sale on the mortgage. It is a familiar principle that a judicial sale extinguishes liens, not estates or interests of third persons: Catlin *v.* Robinson, 2 Watts 378. In order, therefore, to divest by a sale under the mortgage the title or claim to damages of Johnston, who continued to be the owner of the soil, his right must have been derived from the North Western Railroad Co., the mortgagors, subject to the lien of their mortgage. But clearly his title to damages was paramount to the mortgage, for the mortgagors had no title or interest of any kind, not even the easement it is shown to be, until Johnston, as landowner, had been paid or secured for his damages. This interest could not be extinguished by any adversary proceeding, for it rests not only on the constitution, but the law itself, which provided, as we have seen, that no entry or possession should be had until compensation made or security

[Western Pennsylvania Railroad Co. *v.* Johnston.]

given.   Hence, it could be extinguished only by payment, release or limitation.   The Limitation Act, it is said, applies ·to claims for damages : Foster *v.* Cumberland Valley Railroad Co., 11 Harris 371.   This was held by three judges of this court to two. But whatever may be the force of that decision, it has no application here, for the plaintiff in due season prosecuted his claim to a judgment which now stands as a record, and not within the statute.   Nor can it be said that the plaintiff has waived his right. It does not appear that the possession was taken by the North Western Railroad Co. of the plaintiff's land, but conceding this, and that the plaintiff permitted the company to construct its road, and even to use it without payment or security, it is not easy to perceive that a waiver of the trespass can be a waiver of damages in the face of a prosecution of the claim to judgment.   Before payment or security it is clear that the entry is tortious and not rightful.   Though equity might estop an owner standing by and permitting the company to expend money by laying a track upon the land essential to the use of its line of railroad, from regaining the possession, it would not estop him from recovering the damages to which he is entitled for the use of his land, and so it has been held : Borough of Harrisburg *v.* Crangle, 3 W. & S. 464.

The action of trespass is the very form in which a landowner would proceed at common law for the recovery of his damages upon an unlawful entry, had no provision by statute been made : Union Canal Co. *v.* Woodside, 1 Jones 177–8 ; Foster *v.* Cumberland Valley Railroad, 11 Harris 372.   But the statute having provided a remedy, clearly the waiver of the tortious possession would be no bar to recovery of the damages.   The company having the fruits would not be permitted to hold land and money both.

In analogous cases trespass or trover may be waived, and assumpsit maintained for the fruit of the tort ; and if on a proceeding to assess the damages a permissive entry could be set up as a bar, which cannot be conceded, yet it is clearly too late after judgment.   In no view, therefore, can I see how the owner of the soil can be deprived of the compensation secured to him by the law and the Constitution, unless by his own discharge or dereliction.

But this is not enough to determine the case, for it remains to be seen whether the damages can be recovered from the Western Pennsylvania Railroad Company.   Perhaps it would be sufficient for this case to say that the Western Pennsylvania Railroad Company accepted a charter repealing the charter of the North Western Railroad Company, and providing that the damages of the landowners remaining unpaid should remain a lien on the road till paid, and, therefore, that the legislature clearly intended that they should be paid by the new company which, under the

[Western Pennsylvania Railroad Co. *v.* Johnston.]

deed from Hirst and under its charter, is possessor of all the rights and interests of the old company. But the case rests upon other grounds. The plaintiff, who has never parted with his rights, stands on the higher fundamental right of property; that it shall be taken and used by no one for the public purpose of a railroad without just compensation being made to him: Monongahela Nav. Co. *v.* Coons, 6 W. & S. 114; Yost's Report, 5 Harris 524; Borough of Harrisburg *v.* Crangle, 3 W. & S. 460. This is a sacred constitutional right not to be spirited away by refinement. If, therefore, the original occupant has so managed its card as to escape payment until it has divested itself of its interest by any form of alienation, its alienee, mediate or immediate, if it would enjoy the uncompensated right, must pay the price of it, unless it can show an equity growing out of the conduct of the owner of the soil which would estop him. It must not be forgotten we are treating of a case where the owner has done nothing to divest his right by his own act or alienation, but where the alienee of the original actor stands upon a seizure at law, which must be shown to have conformed to the law in all its steps, in order to deprive the owner of his title. The mortgage was but a mode of alienation of the estate of the mortgagor, but could not operate upon the paramount claim of the landowner over the mortgaged interest. This we have seen is not a mere lien, the judgment in the process of assessment not being the source of his right, but the means only of ascertaining the amount of his claim and of enforcing its payment. It could be extinguished only by payment or release. When the alienees of the North Western Railroad Company came into possession, therefore, under their purchase (if at all), they took the interest acquired *cum onere.* If possession never had been obtained, then clearly they could get it only by payment or security. In law and equity neither they nor any one claiming the interest of the North Western Railroad by an act of eminent domain, subordinated by the law and the constitution to payment as the condition of its exercise, can hold and use the interests thus acquired without compensation: Borough of Harrisburg *v.* Crangle, 3 W. & S. 460.

If the case stood at common law this right of the landowner to payment could be enforced by a special action on the case against the alienee: see De Haven *v.* Henderson, and authorities there cited, 7 P. F. Smith 126. But the statute having provided a remedy, it must be pursued: McKinney *v.* Monon. Nav. Co., 2 Harris 65. Gibson, C. J., said in that case: "In Schuylkill Nav. Co. *v.* Thoburn, 7 S. & R. 411, it was held that the compensation awarded is the price of a perpetual privilege assessed once for all." Here the statute has been pursued, the damages ascertained and judgment rendered for their recovery against the original occupant. The owner has therefore exhausted his statutory

[Western Pennsylvania Railroad Co. *v.* Johnston.]

power, and is entitled to execution even though possession has not been taken: Neal *v.* Pitts. & Connellsville Railroad Co., 7 Casey 19. He can bring no new action, and cannot resort to a new petition for assessment. The matter has passed *in rem adjudicatam.* A new proceeding would reopen the whole field of inquiry at a late day, when the circumstances had entirely changed, and the result against the alienee might be wholly different. This would subject the parties to a new litigation after the law had already closed the door of strife. Then why should not the plaintiff have his writ of *scire facias quare executio non* founded on the judgment already obtained? There is nothing to forbid it, and it gives the defendants an opportunity of showing payment, release or any matter of defence in equity why the plaintiff ought not now to have execution for his damages.

Upon the whole case, therefore, the judgment is affirmed.