## A. CAMPBELL ET UX. v. PITTSB. & W. RY. CO.

### APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF CLARION COUNTY.

Argued October 6, 1890—Decided November 3, 1890.

1. A statement of claim which does not set out the full record of a suit in a United States Court, sitting in another county, upon whose judgment or decree the plaintiff's right to recover is based, is defective; the cases where "particular reference" is permitted by § 3, act of May 25, 1887, being confined to records in the county where suit is brought.

(*q*) A decree directing a judicial sale of the franchises, etc., of a railroad company provided: "Any purchaser . . . . shall take . . . . . subject to all unpaid purchase money for any of the lands or rights of way herein referred to, as well as also all unpaid claims of landowners for damages for property taken, injured, or destroyed in the construction of the railroad:"

2. A judgment against the company whose franchises were thus sold, recovered before the sale, in trespass for entering upon plaintiff's land and constructing its road, cannot be recovered in assumpsit against the company purchasing under said decree, especially when, after the judgment and before the sale, the plaintiff had granted a right of way to the old company.

Before PAXSON, C. J., STERRETT, GREEN, CLARK, WILLIAMS and MITCHELL, JJ.

No. 242 October Term 1890, Sup. Ct.; court below, No. 280 April Term 1888, C. P.

On March 20, 1888, Alfred Campbell and Catharine, his wife, in right of said wife, brought assumpsit against the Pittsburgh & Western *Railway* Company, filing a statement of claim alleging a right to recover from the defendant the sum of $1,100, with interest from February 8, 1887, and averring:

"1. That at and prior to the . . . . day of . . . . . 1881, the plaintiff was the owner of a certain messuage and tract of land situate in the township of Farmington, in the said county of Clarion, over and across which land the Pittsburgh, Bradford & Buffalo Railway Company, a corporation chartered under the laws of Pennsylvania, in violation of law and the constitution of said state, had surveyed and located a railroad leading from Foxburg, in Clarion county, to Kane, in McKean county, and thereafter, without any right so to do, acquired by law or by contract with the said plaintiff, entered upon the land of plaintiff and established and constructed a railroad thereon, and continued to operate the same until said company was transferred to and became vested in the Pittsburgh & Western *Railroad* as hereinafter stated.

"2. That at some date between the first of January, 1883, and the first day of January, 1884, the roadbed, rolling stock, and all the franchises of the said Pittsburgh, Bradford & Buffalo Railway Company were duly transferred to and became merged and vested in the Pittsburgh & Western Railroad Company, a corporation chartered under the laws of Pennsylvania and Ohio, which said last named company from thence, until on or about the eighth day of June, 1887, continued to operate said railroad, established and constructed upon the land of the plaintiff as aforesaid; and the said Pittsburg & Western Railroad Company thereby and by reason of the premises and the law in such case made and provided, became and was liable to the plaintiff for the amount of damages sustained by her by reason of her property being taken, injured, or destroyed, and in consequence of the continued trespasses upon her land as aforesaid.

"3. That on the fifth day of August, 1886, the said plaintiff instituted her action of trespass in the Court of Common Pleas

of Clarion county to No. 376 August Term 1886, against the said Pittsburgh & Western *Railroad* Company, for the recovery of the damages sustained by her, as hereinbefore stated, which said action was so proceeded in that on the eighth day of February, 1887, a judgment, on an award of arbitrators, was therein obtained and entered in said court against the said Pittsburgh & Western Railroad Company, and in favor of the said plaintiff, for her damages aforesaid, in the sum of $1,100, and costs of suit; said costs of suit being taxed on the record as follows, to wit. . . . . which said judgment, the said plaintiff avers, is not appealed from, vacated or reversed, but is still in full force and remains unpaid, except the said costs, which have been paid by the said Pittsburgh & Western Railroad Company.

"4. Afterwards, to wit, on the 23d day of April, 1887, in the Circuit Court of the United States for the Western District of Pennsylvania, at No. 22 May Term 1885, in the said court sitting in equity, the said Circuit Court, having jurisdiction according to law for said purpose, in a certain proceeding in said court in which the Mercantile Trust Company and others were plaintiffs, and the said Pittsburgh & Western Railroad Company was defendant, made a decree in due form of law ordering and directing a public sale of the railroad, franchises and property of the said Pittsburgh & Western Railroad Company, subject to certain conditions mentioned in said decree, and appointed Robert B. Carnahan, commissioner of said court, to execute the said order of sale, and make return thereof to the said Circuit Court.

"5. Among other conditions, under and subject to which the said sale was ordered to be made as aforesaid, it was decreed by said court in manner and form as follows, viz.:

"'It is also adjudged and decreed that any purchaser or purchasers, claiming under any sale or sales made under this decree, shall take and hold the railroad or railroads, or any part thereof, sold under and in pursuance hereof, subject to all unpaid purchase money for any of the lands or rights of way herein referred to, as well as also all unpaid claims of landowners for damages for property taken, injured, or destroyed in the construction of the railroad or railroads, or any part thereof, or of any of the works appurtenant thereto, or connected therewith, whether or not the said defendant company or any of the

### Statement of Facts.

constituent companies aforesaid have heretofore secured to such claimants the payment of such damages by giving or filing of its bond or bonds with sureties, as provided by law, the purchaser or purchasers hereunder, or parties claiming by, through or under them, assuming by such purchase the payment of such claims aforesaid.'

" 6. On the eighth day of June, 1887, the said commissioner, in pursuance of the said order and decree, sold the railroad and franchises of the said Pittsburgh & Western Railroad Company (including the said railroad constructed as aforesaid on and over the said land of the plaintiff) at public sale or outcry, subject to the terms and conditions aforesaid, to John Lauber Welsh, John T. Terry, Charles H. Coster and Anthony J. Thomas, for the price or sum of one million dollars; and said sale so made to them as aforesaid was confirmed by the said Circuit Court on the eleventh day of June, 1887.

" 7. The rights and title of the said John Lauber Welsh, John T. Terry, Charles H. Coster and Anthony J. Thomas, in and to the said railroad and franchises, purchased by them at said public sale as aforesaid, thereafter, to wit, on the . . . . day of . . . . , 1887, became duly vested in the said Pittsburgh & Western Railway Company, defendant in this suit, and the said railway company took, held and claimed, and does still hold and claim the said railroad and franchises by, through and under the said purchasers at the said public sale thereof.

" 8. The plaintiff's claim in this action is for the amount of her said unpaid judgment against the Pittsburgh & Western *Railroad* Company.". . . .

The defendant company filed an affidavit of defence containing the following averments: ·

" 2. That the Pittsburgh & Western *Railroad* Company acquired a right of way over and across plaintiff's land, by virtue of a certain writing bearing date May 13, 1887, duly executed by plaintiff, and recorded in the office for the recording of deeds, in Clarion county, . . . . which writing, inter alia, contains the following provision:

" ' That the said Catharine Campbell, and Alfred Campbell her husband, for and in consideration of the sum of two hundred dollars, hath granted, bargained and sold, and by these presents do grant, bargain and sell, unto the Pittsburgh & West-

ern Railroad Company, and its successors or assigns, the free and uninterrupted use of the right of way and passage to the said railroad company, over and across the lands of the said Catharine Campbell, in the township aforesaid, for the distance of about 100 rods, and the width of forty feet, as the said railroad is now located.'

" That said right of way over plaintiff's land was acquired by the said railroad company prior to its sale, and by virtue of said sale became vested in defendant company.

" 3. That defendant company has never committed any act of trespass upon the lands of plaintiff; and is not in any manner indebted to the said plaintiff.

" 4. That the said judgment, recovered in the said action of trespass, was recovered wholly by said plaintiff for the trespass of the said Pittsburgh & Western Railroad Company, committed and continued, as set forth in plaintiff's declaration, up to a period prior in date to the purchase by the parties named in said declaration, under which purchase defendant is incorporated and organized.". . . .

A rule for judgment for want of a sufficient affidavit of defence having been argued, the court, WILSON, P. J., on August 19, 1889, filed an opinion, which, after stating the facts shown and quoting the order of sale set out in the plaintiff's statement of claim, proceeded :

It is difficult to conceive of terms of sale more all-embracing. The commissioner, on June 8, 1887, executed the order and sold the railroad and franchises of the Pittsburgh & Western Railroad Company, subject to the terms of sale, to John Lauber Welsh and others, for one million dollars, which sale was subsequently confirmed. Afterwards, on the . . . . . day of . . . . , 1887, the purchasers sold and transferred the railroad and franchises purchased, to the Pittsburgh & Western Railway Company, the defendant here, which took possession of, and now holds, claims, and operates the railroad and franchises under that purchase.

In the presence of these facts, not at all denied, it cannot be doubted that the defendant, entering upon and operating a railroad on plaintiff's land, without complying with the statutory requirements for the right of way, would be a trespasser :

Harrisburg v. Crangle, 3 W. & S. 463; West. Penn. R. Co. v. Johnston, 59 Pa. 295; McClinton v. Railroad Co., 66 Pa. 407; Dimmick v. Brodhead, 75 Pa. 467; Gilmore v. Railroad Co., 104 Pa. 275; Phila. etc. R. Co. v. Cooper, 105 Pa. 239. All these cases state and reiterate the doctrine that a corporation, such as a railroad, though clothed with the right of eminent domain, cannot take possession of land against the will of the owner, without paying or securing the payment of a just compensation before the taking. This is fundamental law. The owner's right to damages for the trespass is a vested right, of which he cannot be denied: McClinton v. Railroad Co., supra.

By the proceedings in the United States Court, resulting in the sale, it appears that the defendant corporation had made a mortgage on the road and its franchises. There never having been any statutory proceedings for the assessment of damages, the railroad company would have no interest or claim in the plaintiff's land, on which this mortgage would operate, and the sale under it could not extinguish any claim the plaintiff might have for the trespass on her land: West. Penn. R. Co. v. Johnston, 59 Pa. 293.

Nor could this claim for previous damage be extinguished by the agreement for right of way of May 13, 1887, recited in defendant's affidavit, unless it appeared from the reading of the agreement such claim for previous damage was embraced within it. Judgment for the damage in trespass, was recovered February 8, 1887. The mortgage must have been executed by defendant company previously; and, under the authority of the West. Penn. R. Co. v. Johnston, supra, a sale under this mortgage would not convey any title under this right of way agreement of May 13, 1887, to divest the plaintiff's claim for previous damage, unless, as stated, it appeared from the agreement itself such claim for previous damage was released. For reasons to be stated hereafter, the court does not consider that this right of way agreement released the plaintiff's claim for previous damage. The original entry, then, of the defendant company, made by the Pittsburgh, Bradford & Buffalo Railway Company, having been without previous effort, as provided by the acts of 1849 and 1856, for compensation to the owner, would be a trespass, and the title to the premises would remain

in the plaintiff to assert all her legal rights : Phila. etc. R. Co.
v. Cooper, 105 Pa. 239; Gilmore v. Railroad Co., 104 Pa. 275,
and kindred cases.

The sale, therefore, on the order of the United States Court,
would not, itself, extinguish the plaintiff's common-law claim
for damages: West. Penn. R. Co. v. Johnston, supra. The
judgment against the railroad company was for damages by
the defendant for entering and occupying plaintiff's land. It
was not a lien in the ordinary sense, to be divested on the sale
on the mortgage. Indeed, the defendant company had no es-
tate in the land to be bound by a judgment in the usual way.
The title was still in the plaintiff ; the judgment was damages
for occupation. This position results from the reasoning of
Justice AGNEW in the Johnston case cited. While it is true,
that case was a scire facias on a judgment for damages against
the original Northwestern Railroad Company, assessed under
the statutory proceeding, to revive the judgment against the
West. Penn. company, successor to the Northwestern company,
yet it was damages for occupation, practically the same as a
judgment in trespass; except in the former damages were for
past and prospective occupation, while in the latter they are
for the past, or for damages already incurred alone. The
plaintiff never having parted with her rights, shall not be de-
prived of the use of her property without compensation. "If
the original occupant has so managed his card as to escape
payment until it has divested itself of its interest by any form
of alienation, its alienee, mediate or immediate, if it would
enjoy the uncompensated right, must pay the price of it." So
spoke the Supreme Court in the Johnston case mentioned.

The court is of opinion, then, that the sale ordered by the
United States Court did not release or extinguish the plaintiff's
claim for damages. If the defendant here, however, claims to
hold its rights and franchises under such sale, changing its
character from the original defendant in the suit for damages,
yet it would still be responsible to the landowner on this claim,
as an alienee of the original trespasser: De Haven v. Barthol-
omew, 57 Pa. 128; West. Penn. R. Co. v. Johnston, 59 Pa. 295.

But there is another ground of liability equally clear. Ob-
serve the United States Court's terms of sale. Any purchaser
at the sale takes and holds subject to all unpaid purchase

money for any of the lands or rights of way, as well as also all unpaid claims of landowners for damages for property taken, injured, or destroyed in the construction of the railroad or the works. This was so, whether or not the defendant company or any constituent company had secured the claimant's payment of damages by giving or filing bonds as provided by law; the purchaser or purchasers, or parties claiming under them, assuming by such purchase the payment of such claim. What could be clearer? The undoubted intention was to make these damage claims part of the purchase money. The terms of the contract of purchase made the purchaser liable for such claims as the plaintiff makes, not because of any statutory or common-law right of lien, but as part of the contract of purchase. The immediate vendors of the defendant company having purchased on those terms, why should the defendant not be liable to fulfil them? Can it be said the United States Court could not impose them?

In Loomis's App., 22 Pa. 317, it was said: "The rule is incontestably established that a judicial sale of land divests all liens, which in their nature are capable of being ascertained and which are not saved by statute." Again: "But these cases are not authority for more than this: That a contract to buy subject to a lien may be enforced, if it can be done without affecting the interests of persons who are not parties to it. That the principle was not intended to be carried any further is proved by the case of Barnet v. Washebaugh, 16 S. & R. 410, which decided, only four months later than Stackpole v. Glassford, 16 S. & R. 163, that though a sheriff's sale may be subject to a legacy, the lien will be discharged unless it appears expressly that it was the clear understanding of all parties that it was to remain upon the land."

In Barnet v. Washebaugh, supra, it is said: "The intention of the parties best appears here by the conditions of the sheriff's sale." Zeigler's App., 35 Pa. 183, says: "A sheriff's sale of land, in the absence of express stipulations to the contrary, discharges all prior liens. This is a general rule, founded on the universal practice of the courts; but, if the sheriff sell with an express condition that the purchaser shall take subject to the lien of a mortgage which would otherwise be discharged, the courts will enforce the contract." Justice LOWRIE says: "The

contract must be enforced as made, according to the maxim already quoted, and in order that individuals may not suffer from the irregular practice of public officers, which the maxim, actus curiae neminem gravabit, forbids."

To the same effect, practically, are the utterances in Schall's App., 40 Pa. 171, and in Crooks v. Douglass, 56 Pa. 51. In the latter case, Crooks bought land of Douglass and gave a mortgage for the purchase money. Judgments were entered against Crooks. The mortgage was then recorded. Fulton bought at sheriff's sale, with the condition that he bought subject to this mortgage, ahead of which the judgments had been entered. He sold to Cooper, who had knowledge that Fulton bought subject to the mortgage. Cooper was estopped from denying his liability on a scire facias on the mortgage. While these cases arose in instances where the sale was made subject to liens of record, still, if it had not been for the conditions annexed to the judicial sale, they would have been discharged. They recognize the validity of imposing conditions on purchasers at judicial sales, and such conditions becoming part of the contract of purchase.

It is true, also, they were sales of estates in land which were the subject of lien, while the right of way or easement of a railroad company is not such an estate as is the subject of a statutory lien. But why cannot a sale be made of the franchises of a railroad company, with such conditions as will make the purchaser liable to fulfil the contract of purchase? De Haven v. Bartholomew, mentioned, is authority in the same direction. Then again, in Unangst v. Kraemer, 8 W. & S. 400, it was held the action could be maintained against the alienee personally, when he bought the land expressly subject to the charge, making it thereby part of the purchase money.

These conditions, then, imposed by the United States Court, were valid, and could be imposed as part of the consideration of sale. In making such careful conditions, to secure the landowner in any event, the court was, doubtless, impressed with a thought of the probable insolvency of the trespassing company on landowners' rights.

The right of the plaintiff to enforce the collection of claims made part of the purchase money in a judicial sale, is not now a disturbing question. Pidcock v. Bye, 3 R. 194, is authority

in this direction. Bye took a release of the land, subject to
the payment of certain charges to third parties. In an action
by one of the claimants the court says: " The defendant knew
of the charge and took the land subject to it. It was, in fact,
part of the price paid for it, and there was in the whole trans-
action a consideration to the defendant, an express agreement
to pay it to those entitled to it. Those entitled can, by many
authorities, maintain assumpsit," etc. This case is approvingly
cited in Unangst v. Kraemer and in De Haven v. Bartholomew,
supra; so, also, Buckley's App., 48 Pa. 496.

This feature of the case has been discussed apart from the
act of June 12, 1878, P. L. 205. That act would not obtain
against the written stipulations in the terms of.sale. Even if
it did, here the defendant is the same corporation against which
the judgment in trespass was obtained.

But it is contended the agreement for right of way, of May
13, 1887, being before the United States Court sale of June 8,
1887, made the original entry of the defendant on plaintiff's
land lawful and gave title to this right of way over the land;
and, therefore, the sale extinguished the judgment of February
8, 1887, for the trespass, which is the basis of plaintiff's claim.
To support this position, the case of Lawrence's App., 78 Pa.
369, is cited. This case is not so regarded by the court. By
reference to its facts, recited on page 367, the owner of the land
released the railroad company from all claims, damages, etc.,
by reason of their entering upon and taking the land, etc.
The Supreme Court says: " The release operated not by way
of an original conveyance but by way of a discharge from dam-
ages incurred." The paper of May 13, 1887, does not purport to
be a release of all antecedent damage, but a grant of " the free
and uninterrupted use of the right of way and passage to the
railroad company over and across plaintiff's lands, for one hun-
dred feet long and forty feet wide, as the railroad is now lo-
cated." The consideration paid is $200. It must be borne in
mind, at this date the plaintiff had judgment against the defend-
ant company for previous trespasses, for $1,100 and costs. No
reference appears, in the agreement, to that judgment, nor any-
thing in it to indicate the plaintiff was extinguishing it for
$200, about one sixth of its amount. The reasonable construc-
tion, in view of all the surroundings, about this agreement, is,

Arguments.

that the plaintiff was giving a present grant of right of way for the future, without reference to past occurrences.

It has been observed that the entry by the railroad company, previous to approval by the proper court of the bond of indemnity, is a trespass: Dimmick v. Brodhead, 75 Pa. 467. Ejectment or trespass will lie by the landowner in such case. But he may waive his constitutional right to oust the trespasser, and proceed for compensation under the statute. This, being made, divests his title and vests an easement in the company, leaving such company trespasser liable only for the prior trespass. The owner's right, as stated, for the trespass, is a vested right of which he cannot be deprived. But as to that use which is yet to come, the legal remedy for appropriation and compensation may be pursued by either party : McClinton v. Railway Co., 66 Pa. 407. If, instead of presenting a petition for assessment of damages, under the statute, the parties agreed amicably, this would be a substitute for such petition. But this would not extinguish a claim for past occurrences, particularly when such claim had been reduced to a judgment, unless the agreement intended to make it so.

It does not appear, then, that this grant of the right of way of May 13, 1887, or the United States Court's sale, extinguished the plaintiff's claim and judgment for damages of February, 1887. The different averments of the defendant's affidavit are, therefore, insufficient to prevent judgment. . . . .

Judgment having been entered for the plaintiff, liquidated by the prothonotary at $1,276.70, the defendant took this appeal, assigning the order directing judgment to be entered for the plaintiff, for error.

*Mr. W. L. Corbett* (with him *Mr. Don C. Corbett* and *Mr. W. H. Ross*), for the appellant.

Counsel cited: De Haven v. Bartholomew, 57 Pa. 126 ; Blymire v. Boistle, 6 W. 182; Torrens v. Campbell, 74 Pa. 472; Kountz v. Holthouse, 85 Pa. 235; Hostetter v. Hollinger, 117 Pa. 611; Adams v. Kuehn, 119 Pa. 85; Delp v. Brewing Co., -123 Pa. 42, 57.

*Mr. John W. Reed* (with him *Mr. Harry R. Wilson*), for the appellee.

Counsel cited: (1) Harrisburg v. Crangle, 3 W. & S. 460; Penna. R. Co. v. Eby, 107 Pa. 166; Bethlehem Co. v. Yoder, 112 Pa. 136; McClinton v. Railway Co., 66 Pa. 404; West. Penn. R. Co. v. Johnston, 59 Pa. 290; Buffalo etc. R. Co. v. Harvey, 107 Pa. 319. (2) Crooks v. Douglass, 56 Pa. 53; Tospon v. Sipe, 116 Pa. 600; Jones v. Raiguel, 97 Pa. 437.

OPINION, MR. JUSTICE MITCHELL:

The plaintiff's statement is defective in not exhibiting the full record of the suit in the Circuit Court of the United States, on which the right to recover against the present defendant depends. The procedure act of 1887, in express terms, requires the statement to be accompanied by copies of all notes, contracts, etc., and the excepted cases where "particular reference" to records is sufficient, are confined to records in the county where suit is brought. The importance of such copies is well exemplified in the present case. The decree of the Circuit Court requires the purchaser at the sale to take subject to "all unpaid purchase money for any of the lands or rights of way herein referred to." What are so referred to, we can only conjecture. For all that appears in the statement, they may be specially described lands and rights of way of which plaintiff's is not one.

But, irrespective of the incompleteness of the statement, it discloses no cause of action. The claim is made against one corporation, on a judgment against another. What is the basis of liability? Not a lien on land, for as to the particular land in question it was and is the plaintiff's own, and the Pittsburgh & Western Railroad Company had no title on which a lien could fasten: and, as to any other land of the Pittsburgh & Western Railroad Company which the judgment might have grasped, the lien was discharged by the sale. It is plain, therefore, that the present defendant is only liable, if at all, by the decree of the Circuit Court, and the terms of the sale under which its title accrued.

It is not necessary to discuss the authority of the Circuit Court to impose the terms it did as to the sale. The purchaser, and those in privity with him, are in no position to question the terms which they agreed to when they bought. But the decree was out of the usual course of judicial sale, and in deroga-

Opinion of the Court.

tion of the general principle that purchasers at such sales take the land discharged, or subject only to such known and ascertainable liens as are expressly preserved. We must therefore examine the decree to see that its effect is not pushed beyond its intended limits. The language is, " any purchaser . . . . . shall take . . . . . subject to all unpaid purchase money for any of the lands or rights of way herein referred to, as well as also all unpaid claims of landowners for damages for property taken, injured, or destroyed in the construction of the railroad," etc. All that is included in this language is what is commonly known as land damages, to wit, compensation to the owners of the land over or along which the railroad is constructed, for the injury to their land by such construction, and the right of action is given in the words of the constitution to all owners of land, for " property taken, injured, or destroyed by the construction." Such damages form a well-known class, having certain features peculiar to themselves, such as express protection by name in the constitution, exemption from ordinary statutes of limitation, etc. This is the class of claims which the decree imposes upon the purchaser. It is not said that he shall take subject to the debts or judgments of the old company generally, as for goods furnished or services rendered, or for negligence or trespasses, but only for the particular class of obligations clearly indicated. The claim of the plaintiff is for a debt of the old company on a general judgment for damages by trespass. It is on the same legal footing as to the purchaser, the present defendant, as a judgment for damages for burning plaintiff's barn, or running over his cattle. It is not in any legal sense for land taken, or right of way acquired. The plaintiff's claim for compensation, in that regard, was the same after this judgment as before. It is this feature which distinguishes the present case from West. Penn. R. Co. v. Johnston, 59 Pa. 290, and Buffalo etc. R. Co. v. Harvey, 107 Pa. 319. Those were cases of damages for land taken in the construction of the railroad, and in the former the charter of the defendant expressly made such damages a perpetual lien until paid.

We are therefore of opinion that the claim of plaintiff belongs to the class of general debts of the Pittsburgh & Western Railroad Company which were not covered by the terms of the

Syllabus.

decree of the Circuit Court, and for which the defendant is not liable. Even if this conclusion were doubtful upon the terms of the decree, which we do not regard it, it would be made clear by the fact set forth in the affidavit of defence, that the plaintiff granted the right of way to the Pittsburgh & Western Railroad Company, after the judgment for the trespass and before the sale. It is true the agreement did not, so far as appears here, release the damages for the previous trespass of the defendant in the judgment. That claim still remained good against the trespasser. But it severed the past trespass from the future lawful occupation, and gave the old company an unquestionable title to a right of way, to which the purchaser succeeded. At the time of the sale, therefore, the plaintiff had no claim for any "unpaid purchase money, or right of way," and no right of action to which the purchaser became subject.

Judgment reversed.

