The Detroit & Saline Plank–road Company v. The City of Detroit.

*Plank-road companies—Taxation.*

A lot purchased by a plank-road company, outside of and adjoining its right of way, upon which it has erected a residence for its toll-gate keeper, is exempt from ordinary taxation while used for that purpose.

Appeal from Wayne.    (Hosmer, J.)    Argued June 6, 1890.    Decided June 27, 1890.

Bill to set aside tax titles on land claimed by defendant, as exempt from taxation.    Defendant appeals. Affirmed.    The facts are stated in the opinion.

*C. A. Kent,* for complainant.

*John W. McGrath,* for defendant.

[The points of counsel are stated in the opinion, where the authorities are reviewed.—REPORTER.]

CHAMPLIN, C. J. The bill of complaint in this cause is filed to set aside tax titles held by the city of Detroit for the years 1886 and 1887 on a lot on Michigan avenue owned by complainant, and to have the lot decreed to be exempt from taxation.

The lot has a frontage of 44 feet upon Michigan avenue, and was purchased by the plank-road company in 1873, since which time it has been used for a residence for their gate-keeper. The toll-gate is built in front of the dwelling. Between the gate and the sidewalk is the gate-keeper's office, the roof to the dwelling extending over the sidewalk and covering such office. The place has been constantly used for the collection of toll and as a residence of the toll-gatherer, save from April, 1885, to March, 1888, when it was occupied by the superintendent of the plank-road company. There is a large amount of travel passing by this toll-gate, and a keeper is required to be there during the whole 24 hours of the day. The lots fronting on Michigan avenue are built up with stores up to the company's lot, so that to erect a toll-house in the avenue in front of adjoining property would greatly injure such property, and render the company liable in damages.

The Detroit & Saline Plank-road Company is a corporation organized under a special act of the Legislature (Laws of 1848, p. 110), and by the act is made subject to the plank-road act of 1848, which is reproduced in How. Stat. § 3566 *et seq.*[1] Section 3583, How. Stat., as amended in 1853, enacts:

"Each and every plank-road company shall pay to the Treasurer of the State of Michigan an annual tax at the rate of five per cent. on the net profits of said company for the year preceding the day on which the report in the ninth section of this act mentioned shall be made,

[1] See *Carver v. Plank-road Co.*, 61 Mich. 584; *Plank-road Co. v. Mahoney*, 68 Id. 265,—for cases affecting this corporation.

which tax shall be paid on the first Tuesday of July in each year, and shall be estimated upon the last preceding report of said company, and said State tax shall be in lieu of all other taxes upon the property of said company."

In view of this provision of the law, it is claimed that the taxes assessed in 1886 and 1887 are unauthorized and an illegal exaction. It is further claimed by complainant that "the lot in question is necessary for the legitimate uses of the company. The company must have a toll-gate; and a house for the family of the keeper, if not absolutely essential, is nearly so;" that "it is included in the language of the statute 'toll-gates and houses' (section 3568);" and if the company had the right to own and use the lot in question it is exempt from ordinary taxation. The question, therefore, is in small compass, and is whether, under the statute, a plank-road company is authorized to own a house and lot for its toll-gate keeper to reside in, outside of the limits of its right of way.

The power to acquire property is conferred by section 3568, which enacts that all such corporations shall—

"Be capable of purchasing and acquiring from any person or persons, by gift, grant, or otherwise, and holding, any lands, tenements, and hereditaments necessary to be used in the construction, repair, and preservation of any such road, and may establish by-laws and regulations necessary for the construction, preservation, and repair of any such road or roads, and the erection of toll-gates and houses thereon."

Counsel for defendant insists that the word "thereon" has a definite and restrictive meaning, and confines the limits within which the houses and gates may be constructed to the limits of the highway itself; and he calls attention to section 3578, which authorizes the exercise of the power of eminent domain, and which confers the exercise of such powers only to the route of the road as

laid out by the company; and, by section 3581, the width which such roads shall be laid out is directed to be at least 2, and not more than 4, rods wide, and the road-bed shall be at least 16 feet wide. But this section must be read in connection with the section which precedes it (§ 3577), which requires the board of directors, as soon as the company is organized, to—    .

"Proceed to cause an accurate survey and description to be made of the route of their road, and of the land necessary to be taken by said company for the construction of such road and the necessary buildings and gates."

They have the power conferred to condemn a right of way 66 feet wide, and, after constructing a roadway upon one side, they would have a strip of land 50 feet in width, upon which they may construct a gate-house and keeper's residence if they choose. This would seem to be ample for the purpose, and, being so, can it be said that it is necessary to go outside of the limit which the law authorizes them to hold, in order to construct a residence for a gate-keeper? There is no express authority for them to do so, and there is no absolute necessity from which such authority may be implied.

In the case of *Tucker v. Tower*, 9 Pick. 108 (decided in 1829), the plaintiff brought an action against a person who was acting under the authority of a turn-pike company, to recover damages for entering his land, digging pits in the soil, cutting down trees, and erecting buildings thereon. It appeared that this alleged trespass was within the bounds of the highway or turnpike road owned by the Taunton & South Boston Turnpike Corporation, and the acts complained of consisted in erecting a residence for the accommodation of the toll-gatherer and his family. The plaintiff claimed that he owned the soil to the center of the highway. The court held that the right given to appropriate land for the purposes men-

tioned in the act conferred the right to erect and main-
tain a toll-house at or near the gate, and within the four
rods laid out for the highway; that the house thereon for
the residence of the toll-gatherer was certainly within the
reasonable purposes and intent of the legislature, to pre-
vent the delay to passengers which would occur if his
dwelling-house should be at a distance; and in that case
no authority was given by the act to appropriate any
land without the exterior side lines of the road, so that
if the proprietor of the adjoining land should refuse to
sell a house lot, or demand an extravagant price for it,
the company or the public might be put to great inconven-
ience. The court therefore held that a house for this pur-
pose might lawfully be erected on the land laid out for
the road, provided the road was not thereby so narrowed
that the house would become a public nuisance; and the
court further held that the toll-house might be placed
there, and that, if convenient, it might be made so as to
accommodate the toll-gatherer for a dwelling-house, and
that all things necessary for this might be as lawfully
done, such as digging the cellar, well, etc., under the
restriction that it should not interfere with the proper
use of the highway for public travel. And it was also
held that it was necessary to the enjoyment of the ease-
ment or franchise conferred that there should be a toll-
house, and not inconsistent with the right of property in
the plaintiff that the toll-house should be so constructed
as to admit of occupation by the family of the toll-
gatherer.

So in the case of *Turnpike Co. v. Stoever*, 2 Watts &
S. 548, the company was not expressly authorized to
condemn lands outside of its right of way. It, however,
built its road upon the public street, which was 50 feet
wide, within the limits of a city, and erected a toll-house
in the street in front of Stoever's lot. He sued them in

trespass. The court held that the company had a right to erect toll-houses for the toll-gatherers and their families to reside in within the limits of the street, and said:

"It is not easy to see how the business of collecting the tolls and performing other duties at the gates could be conveniently conducted without houses for the accommodation of the toll-gatherers. * * * The company are expressly authorized and required to appoint toll-gatherers to attend at the gates to collect and receive the tolls appointed; and their constant attendance at all hours * * * is indispensable for the accommodation of the public in passing along the road. And this cannot properly be done without houses there to shelter them and their families."

And the court further observed:

"It has, we believe, been the constant usage on our turnpikes to erect the toll-houses at the gate within the road, so as not, however, to interfere with the stone or gravel part of the road."

The court also approved the case above cited from 9 Pick. 108.

But it is claimed in this case by counsel for the complainant that, if the general plank-road law does not authorize the company to condemn lands outside of its right of way for the purpose of erecting toll-houses, still it has the right to purchase land which it can obtain the fee to voluntarily for such purpose, and that it is so far necessary to the enjoyment of the franchise conferred as to be exempt from taxation.

We think it may be conceded that a residence for the toll-gatherer is necessary to the operation of the road by the company and the convenience of the public; and the question arises whether it is indispensably necessary for that purpose, or, if not indispensably necessary to purchase land outside of its right of way, whether it comes

within the fair and legitimate scope of the means necessary to discharge its duty to the public.

In the case of *State v. Leggett,* 41 N. J. Law, 319, which was a case where a railroad corporation had land which it used for the purposes of its corporation, but which it was claimed was unnecessary to the company in the operation of its road, the court said:

"Perhaps this land is not *indispensably* necessary to the company in the operation of its road;    *    *    * but *indispensability* is not the test whereby to determine what property in use will be exempt from taxation."

And the case of *State v. Hancock,* 35 N. J. Law, 537, is cited in support of the position that absolute necessity is not required. In that case, in which the question arose whether the land in use by the railroad company was subject to taxation, the company being required to pay a specific tax, as in this case, the court say that—

"Such an exempting clause will protect all property held by the company necessary to accomplish the end for which they were incorporated. The word 'necessary,' in this connection, does not mean 'indispensable.' It embraces all things suitable and proper for carrying into execution the powers granted."

The opinion in that case was by Chief Justice Beasley, and is a clear exposition of the meaning of the term " necessary " as applied to property required for the public use.

Now, applying these principles to the case under consideration, the question arises whether or not, as this property is circumstanced, it should be exempt from ordinary taxation. It is upon a public thoroughfare within the corporate limits of the city of Detroit. Stores and places of business are upon either side of the street, and coming directly up to and passing beyond where this property is located. As constructed, the sidewalk is con-

tinuous, passing under the roof of the gate-house, thus permitting passage of persons along the street in such a manner as not to inconvenience them at all; but if we are to hold that the company has the right to the use of the whole width of the street for the purpose of erecting its toll-house, and residence or dwelling for the toll-gatherer, and the company should be compelled to confine itself to the street, it would cause a serious interruption to the passage of persons along the street; and, while the law does not authorize the company to condemn land outside of the lines of its right of way, yet, when it acquires property for the ordinary use of the corporation in carrying on its business, such as this is, it is within the spirit, if not within the absolute letter, of the law. The company pays a specific tax on its net profits, and it makes but little difference to the public whether it expends its money to build its necessary gate-houses and keepers' dwellings upon the right of way, or expends it in buying a piece of ground convenient to its toll-gate for its keeper's residence. In either case its capital is invested in property which is regarded as necessary to transact its business. It is no less necessary, in the legal acceptation of the term, to the operation of the business which complainant is authorized to carry on, whether the toll-gatherer's residence is located without or within the lines of the road.

We think when this law was enacted (in 1848) it was regarded as the ordinary thing for turnpike companies and plank-road companies to erect dwellings for the family of the gate-keeper, and, so far as we have observed, this has always been done. It may therefore be considered as a necessary incident in the carrying on of such business, and proper and convenient for the accommodation of the public, and therefore, within the sense of the

law, it may be regarded as a necessity; and, while it is continued to be used for that purpose, it is not subject to ordinary taxation. Consequently the decree of the court below must be affirmed.

CAHILL and LONG, JJ., concurred with CHAMPLIN, C. J. MORSE and GRANT, JJ., did not sit.