*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CAROL J. LOCKHART REVOCABLE TRUST, by
MICHELLE P. BIDDINGER, Successor Trustee,

       Plaintiff/Counterdefendant,

and

CALVIN W. LOCKHART LIVING TRUST, by
CALVIN W. LOCKHART, Trustee, and CALVIN
W. LOCKHART, Individually,

       Intervening
       Plaintiffs/Counterdefendants-
       Appellees,

v

PARAMOUNT ENTERPRISES LAND, LLC,

       Defendant/Counterplaintiff-Appellant,

and

HEMPHILL FAMILY LIABILITY COMPANY, as
Successor and Assign to PARAMOUNT
ENTERPRISES LAND, LLC,

       Defendants/Counterplaintiffs.

UNPUBLISHED
December 03, 2024
11:19 AM

No. 367618
Tuscola Circuit Court
LC No. 2017-029825-CK

Before: BORRELLO, P.J., and N. P. HOOD and YOUNG, JJ.

PER CURIAM.

       Defendant/counterplaintiff, Paramount Enterprises Land, LLC (PEL), appeals by right the
trial court's order regarding damages. The trial court's order followed a remand from this Court,
where we affirmed the trial court's earlier ruling that PEL had a prescriptive easement, but vacated

-1-

trial court's earlier award of damages. This appeal relates to what the trial court was required to do, and what it was allowed to do, on remand. The underlying case arises out of a land-use dispute over PEL's right to use water that accumulated in a gravel pit, which intervening plaintiffs/counterdefendants, the Calvin W. Lockhart Living Trust and Calvin W. Lockhart in his individual capacity, alleged violated their property rights. The trial court found that PEL had an easement by prescription to use the water, and we affirmed. *Carol J Lockhart Revocable Trust v Paramount Enterprises Land, LLC*, unpublished per curiam opinion of the Court of Appeals, issued May 19, 2022 (Docket No. 356306).

The trial court permitted PEL to add Paramount Enterprises Dairy, LLC (PED)—which was owned by the same person who owned PEL—as a party, and PED established that it suffered damages from being unable to use the water. On this issue, we held that the trial court erred by permitting PED to be added as a party, see *id*. at 7-8, vacated the award of damages, and remanded for further proceedings, *id*. at 8-9.

At issue in this appeal is the trial court's interpretation of the scope of our prior remand order. Intervening plaintiffs argue that our order forbade the trial court from permitting PEL to submit evidence of its damages. PEL argues that the trial court was required to permit it to submit evidence of its damages. Both are wrong. The correct understanding of our remand order is that the trial court had discretion regarding whether to permit PEL to present evidence that it suffered damages. The trial court abused its discretion by entering its order without exercising that discretion. We therefore vacate and remand.

I.  BACKGROUND

A.  FACTUAL BACKGROUND OF ORIGINAL DISPUTE

Although this case now centers on the question of damages, this case started with a land-use dispute related to land that the Lockhart family owned in Fremont Township, Michigan. In our prior opinion, we summarized the background of this case:

> The Lockhart family has owned property in Fremont Township for several generations. A portion of the property was formerly used for gravel mining. The resulting pit filled with water after the gravel mining ceased, creating a pond. The pond measures approximately 394,500 square feet and reaches a maximum depth of approximately 27 feet. In 1977, a portion of the Lockhart property, including approximately 61,400 square feet of the pond and land fronting the pond, was conveyed to Calvin and his wife by Calvin's parents, Walter and Carol. Later, in June 1986, Calvin's parents granted an easement to their neighbors, Cecil Wallace and Pauline Wallace, allowing them to use the pond for irrigation purposes. [*Id*. at 2-3.]

Regarding the ownership interests at the beginning of the case, the parties did not dispute that "the farming property formerly owned by the Wallaces was owned by PEL[,]" "[t]he property Calvin acquired in 1977 was owned either by Calvin or his trust, and the remaining portion of the original Lockhart property was owned by plaintiff, the Carol J. Lockhart Revocable Trust." *Id*. at 2.

"Intervening plaintiffs' verified complaint in this action alleged that PEL's irrigation practices lowered the water level in the pond, resulting in erosion of the portion of their land that abutted the pond." *Id*. They alleged that PEL did not have their permission to draw water from the pond. *Id*. In 2018, they obtained a temporary restraining order (TRO) enjoining PEL from drawing water from the pond. *Id*. PEL then counterclaimed, arguing that it and its predecessor's continuous use established a prescriptive easement with respect to intervening plaintiffs' property. *Id*.

In August 2019, PEL successfully moved to terminate the TRO. *Id*. Brent Robinson, the sole member of PEL, testified about the effects of the TRO. *Id*. "Specifically, he testified that he had leased the property to Laracha Farms to plant sugar beets." *Id*. Essentially, he testified that the TRO and his remedial efforts to find a new water supply caused the sugar beet crop to struggle. *Id*. Calvin disputed this testimony, but the parties agreed at the conclusion of the hearing to allow PEL to temporarily use a limited amount of the pond water. *Id*.

The claims between plaintiff and PEL settled before trial, and in October 2019, the court held a bench trial:

> Robinson testified at trial that he sustained damages to the sugar beet crop because of the restraining order, but would not know the extent of the damages until the crop was harvested. On the basis of testimony and evidence presented at several hearings and the bench trial, the trial court found (1) no cause of action as to intervening plaintiffs' claim against PEL and (2) that PEL was entitled to a prescriptive easement and damages for intervening plaintiffs' interference with said easement. [*Id*. at 2-3.]

Between January 2020 and January 2021, the trial court held evidentiary hearings on damages. At a January 2020 hearing, "Robinson testified that he entered a sublease for the property with Laracha Farms in an attempt to mitigate the damages he would incur from the interference with his water supply during the pendency of the case." *Id*. at 3. Critically, the sublease established that "the contract actually existed between Laracha Farms and PED. Robinson testified that PEL was a land holding company, PED was the operations company, and he was the sole member of both entities." *Id*.

The relationship between Robinson, PEL, and PED was critical to the outcome of the trial, original damages award, and first appeal. We stated:

> When the evidentiary hearing resumed in January 2021, Robinson presented testimony regarding the damages sustained by "Paramount Enterprises" as a result of this litigation. After Robinson's testimony, PEL moved to "have the record name of Paramount Enterprises Land, LLC, conform to the proofs, which would also include Paramount Enterpri[z]es Dairy, LLC." Intervening plaintiffs objected, arguing that PEL and PED were separate entities that should be treated separately. The trial court granted the motion to amend the record. It acknowledged that the intervening complaint and counterclaim both referred to PEL, but reasoned that "it is a closely held corporation, the LLC is basically Mr. Robinson because he's the sole member." The court deemed it appropriate to "conform with the proofs which

have been presented from the very beginning." The court then entered a judgment in favor of Paramount defendants in the amount of $176,200.28, consistent with the summaries of losses prepared by Robinson. [*Id*. at 3 (alteration in original).]

## B. PRIOR APPEAL

In the prior appeal, intervening plaintiffs challenged the trial court's finding that there was a prescriptive easement in favor of PEL, and we rejected that challenge. *Id*. at 4-6. Intervening plaintiffs also argued that the trial court had abused its discretion by permitting the amendment to the pleadings to add PED as a defendant/counterplaintiff, and we agreed with that argument. *Id*. at 7. We specifically rejected the proposition that the inclusion of PED had been a mere technicality because Robinson owned both PED and PEL. *Id*. We essentially concluded that this error was not harmless and tainted the damages award. See *id*. at 8.

> [A]mending the pleadings to add PED as a defendant/counterplaintiff added an entirely new and different party to the case and was therefore was not permitted under the misnomer doctrine. We also decline to characterize the addition of PED as a mere technicality particularly when intervening plaintiffs did not have notice of the damages related to PED until the evidentiary hearing and were denied discovery thereafter. PEL's counterclaim merely alleged damages pertaining to the "loss of value of property purchased as irrigated property and lost yield of crops from having lost its source of water for irrigation . . . ." Before the bench trial, there was no mention of PED, an operations company distinct from PEL, or losses incurred because of the inability to plant corn. And at the bench trial, Robinson's testimony regarding damages pertained only to the sugar beets that were allegedly being affected by the reduced water. Accordingly, intervening plaintiffs did not have notice to conduct discovery of damages relating to PED, and when they sought to do so after the evidentiary hearing was adjourned, the trial court quashed the subpoena. In short, intervening plaintiffs were denied a meaningful opportunity to defend against damages associated with PED and were therefore prejudiced by the amendment to the pleadings at this late stage of litigation. See *Ben P Fyke & Sons v Gunter Co*, 390 Mich 649, [663]; 213 NW2d 134 (1973) ("The litigation may proceed to a point where the opposing party cannot reasonably be expected to defend against the amendment; this is an especially pertinent factor on the eve of, during, or after trial."). Under these circumstances, the trial court abused its discretion by allowing PEL to amend the pleadings to include PED as a defendant/counterplaintiff. [*Lockhart Trust*, unpub op at 8.]

In other words, the addition of a separate entity late in the case fundamentally prejudiced the intervening plaintiff's ability to defend on the issue of damages. See *id*.

We finally concluded "that the trial court's damages award was tainted by its error in allowing the pleadings to be amended to include PED as a party in this case." *Id*. We explained:

> Robinson testified that his computation of damages encompassed both of his companies. However, it seems clear that PED is the proper party with respect to the damages arising from the temporarily reduced water availability. Again,

-4-

PED is the operations company, while PEL is merely the land holding company. It was PED rather than PEL that executed the leases with Laracha Farms to mitigate the losses. And PEL's motion to add PED as a party in order to conform to the proofs after Robinson's testimony was seemingly a tacit admission that PED is the party that suffered damages.

In any event, we agree that the trial court's award of damages is speculative because there is no basis in the record evidence to identify the amount of damages sustained by PEL alone. Given our conclusion that PED was not properly joined in this action, we are definitely and firmly convinced that the trial court erred by awarding damages sustained, at least in part, by PED. Accordingly, we vacate the award of damages.[7]

---

[7] We express no opinion on the viability of PED bringing a new suit to recover its damages. We note, however, that no party has yet to raise the issue of whether damages can be recovered for a wrongfully entered injunction in the absence of a bond.

---

[*Id*. at 8-9.]

We affirmed the trial court's ruling that PEL had a prescriptive easement but "vacate[d] the trial court's judgment awarding damages and remand[ed] for further proceedings as necessary, and consistent with this opinion." *Id*. at 9. The scope of this language is the crux of this appeal.

## C. PROCEEDINGS ON REMAND

Once remanded to the trial court, intervening plaintiffs moved for entry of an order that they deemed compliant with our opinion. They argued that the trial court was required to comply with our judgment. In their view, because we vacated the trial court's damages award without expressly holding that PEL may present proofs of its own damages, the trial court was not permitted to do anything other than enter a final order affirming the prescriptive easement and vacating damages. PEL disagreed with intervening plaintiffs' interpretation of our opinion. Intervening plaintiffs' proposed order (which the trial court later entered) provided, in relevant part, that the "prescriptive easement as set forth in the Court's Order of December 6, 2019, shall remain in full force and effect," "that the award of damages set forth in the Court's Order of January 26, 2021, is vacated," and that it was a final order closing the case.

The trial court held a short hearing, at which PEL argued that it was entitled to its own damages, which it acknowledged would be "[v]ery limited," but nevertheless existed. It argued that there had been "a contract to grow the beets because we couldn't put the corn in," and it was entitled to "the value of what would have been grown had we had the water," which had already been provided to the trial court. The trial court took the matter under advisement.

Following the hearing, PEL filed a written memorandum, arguing that the memorandum's (presumably previously submitted) exhibits and prior testimony established that PEL suffered a precisely quantifiable loss of its own. Thus, according to PEL, no speculation was required. The exhibits attached to the memorandum are confusingly labeled and difficult to follow. For example,

-5-

PEL's memorandum stated the exhibits included evidence that the rental price of the property was $350 per acre with irrigation and $300 per acre without. But no such figure appears in the attachments and, instead, PEL attached two copies of a rental agreement between PED and Laracha Farms specifying an unconditioned rental price of $250 per acre. Still, Robinson had previously provided rental agreements indicating that Laracha Farms would pay $350 per acre for a full water supply and $300 without. But again, that rental agreement was between Laracha Farms and PED, not PEL.

The trial court disagreed with PEL's position. It entered a written order summarizing the parties' positions as follows:

> Intervening Plaintiffs argue that the Court should enter an order that complies with the Michigan Court of Appeals' opinion. Intervening Plaintiffs argue that the Michigan Court of Appeals clearly specified what this Court was to do here, and that was to vacate damages without reexamination of the issue. Intervening Plaintiffs argue that if the Michigan Court of Appeals wanted the issue of damages reexamined, it would have specified in its opinion. Defendant PEL argues that a hearing should be set to determine the damages it sustained only. Defendant PEL argues that the Michigan Court of Appeals ruling allows for separate damages as to the correct party, PEL.

The trial court accepted intervening plaintiffs' argument, reasoning that, because we expressly stated in a footnote that we expressed no opinion regarding whether PED could bring a new suit to recover damages, we had tacitly implied "that a new suit is required to determine the viability of the damages claim by PED," consistent with our holding that PED was not properly joined. The trial court also reasoned that we had opined that "PED is the party that suffered damages" and that the damages suffered by PEL alone could not be distinguished from PED's damages on the record. "Accordingly, the Michigan Court of Appeals vacated the entire damages award, while leaving open the possibility of PED bringing a new suit for damages without analyzing its merit." The trial court therefore entered intervening plaintiffs' proposed order vacating the damages award without further analysis.

PEL timely moved for reconsideration. It argued that the trial court and intervening plaintiffs misconstrued our opinion because we remanded for further proceedings rather than for entry of a judgment of no cause of action. The trial court denied the motion. This appeal followed.[1]

## II. STANDARD OF REVIEW

"Whether a trial court properly interpreted the scope of a remand is a question of law that this Court reviews de novo." *Law Offices of Jeffrey Sherbow, PC v Feiger & Feiger, PC*, ___ Mich App ___, ___; ___ NW3d ___ (2023) (Docket Nos. 360582 & 361567); slip op at 7. "Similarly, this Court reviews de novo the determination whether the law-of-the-case doctrine

---

[1] Following PEL's claim of appeal, intervening plaintiffs moved to affirm in this Court. We denied the motion. *Carol J Lockhart Revocable Trust v Paramount Enterprises Land, LLC*, unpublished order of the Court of Appeals, entered January 31, 2024 (Docket No. 367618).

applies and to what extent it applies." *Lenawee Co v Wagley*, 301 Mich App 134, 149; 836 NW2d 193 (2013). "In general, a trial court's legal determinations are reviewed de novo, any underlying factual findings are reviewed for clear error, and ultimate discretionary decisions are reviewed for an abuse of that discretion." *Hein v Hein*, 337 Mich App 109, 115; 972 NW2d 337 (2021). "[A] motion to reopen proofs is a matter within the discretion of the court." *Bonner v Ames*, 356 Mich 537, 541; 97 NW2d 87 (1959). The "abuse of discretion standard acknowledges that there will be circumstances in which there will be no single correct outcome; rather, there will be more than one reasonable and principled outcome," and a lower court does not abuse its discretion by selecting "one of these principled outcomes." *Maldonado v Ford Motor Co*, 476 Mich 372, 388; 719 NW2d 809 (2006) (quotation marks and citation omitted). "Failure to exercise discretion when called on to do so constitutes an abdication and hence an abuse of discretion." *Hein*, 337 Mich App at 116 (quotation marks, brackets, and citation omitted). Additionally, "[w]here the trial court misapprehends the law to be applied, an abuse of discretion occurs." *Bynum v ESAB Group, Inc*, 467 Mich 280, 283; 651 NW2d 383 (2002). A reviewing court may ascertain the meaning of undefined legal terms of art by consulting a legal dictionary. *In re Petition of Emmet Co Treasurer for Foreclosure*, 345 Mich App 692, 700; 9 NW3d 142 (2023).

## III.  LAW AND ANALYSIS

The onus was (and is) on this Court to provide the parties and the trial court with clear guidance when we remand. The correct reading of our prior remand order is that PEL did not establish that it suffered any damages of its own based on the record that existed during the prior appeal. Our prior remand order did not require the trial court to hold an evidentiary hearing or otherwise permit PEL to submit evidence that it suffered any damages of its own. But it also did not preclude the trial court from reopening the proofs. The trial court still had discretion. It could have properly chosen not to permit PEL to submit evidence that it suffered damages. But because it failed to realize that it had any discretion to exercise, the trial court necessarily abused its discretion when it failed to decide whether and how to exercise it.

### A.  LAW OF THE CASE AND THE RULE OF MANDATE

This appeal and the apparent confusion over our prior mandate implicate the law-of-the-case doctrine and the related rule of mandate. Under the law-of-the-case doctrine, a lower court must "comply strictly with the mandate of the appellate court" and errs "when it revisits a matter on which this Court has already ruled." *Schumacher v Dep't of Natural Resources*, 275 Mich App 121, 128; 737 NW2d 782 (2007) (quotation marks and citation omitted). The law-of-the-case doctrine applies only to issues that a higher court actually, whether explicitly or implicitly, decided. *Rott v Rott*, 508 Mich 274, 287; 972 NW2d 789 (2021). The law-of-the-case doctrine applies irrespective of whether the high court's prior determination was correct. *Augustine v Allstate Ins Co*, 292 Mich App 408, 425; 807 NW2d 77 (2011). A lower court may not exceed the scope of any instructions given to it in a remand order, but "[w]hen an appellate court remands a case without instructions, a lower court has the same power as if it made the ruling itself." *Glenn v TPI Petroleum, Inc*, 305 Mich App 698, 703; 854 NW2d 509 (2014).

Under the related but distinct "rule of mandate," a lower court must strictly comply with all specific instructions in a remand order that a higher court issues to it. *Int'l Business Machines Corp v Dep't of Treasury*, 316 Mich App 346, 350-353; 891 NW2d 880 (2016). The lower court,

however, is not prohibited from considering and deciding "any matters left open by the appellate court's mandate." *Law Offices of Jeffrey Sherbow*, ___ Mich App at ___; slip op at 7 (quotation marks, brackets, and citation omitted). "The power of the lower court on remand is to take such action as law and justice may require so long as it is not inconsistent with the judgment of the appellate court." *Id*. (quotation marks and citation omitted).

To the extent that reopening the proofs related to damages was a matter within the trial court's discretion, we acknowledge that there is little recent published authority addressing motions to reopen proofs in civil cases. In the criminal context, reopening proofs for either the prosecution or the defense "rests within the sound discretion of the trial judge." *People v Solomon*, 220 Mich App 527, 532; 560 NW2d 651 (1996) (citation omitted). Our Supreme Court outlined the principles that should guide the trial court's discretion as including surprise to the other party, inconvenience to the court or other individuals involved in the case, and whether the party seeking to reopen the proofs would gain an unfair advantage. *Bonner*, 356 Mich at 541. This Court has also stated "that proper judicial discretion requires that no cause should be dismissed for failure of proof until the [party] has been given the opportunity to supply any deficiencies if it appears he has been diligent in prosecuting his claim and that no disruption of the court of prejudice to the opposing parties will result." *Serijanian v Assoc Material & Supply Co*, 7 Mich App 275, 281; 151 NW2d 345 (1967).[2] "Relevant in ruling on a motion to reopen proofs is whether any undue advantage would be taken by the moving party and whether there is any showing of surprise or prejudice to the nonmoving party." *People v Herndon*, 246 Mich App 371, 420; 633 NW2d 376 (2001) (quotation marks and citation omitted).

## B. SCOPE OF THE PRIOR APPEAL AND ITS MANDATE

Before we can determine whether the trial court complied with our remand order, we must first reiterate the scope of that order. In other words, we must clarify what we were trying to convey in the last case. Our prior order did not hold that PEL was necessarily unable or unentitled to establish that it suffered compensable damages. We neither required the trial court to hold an evidentiary hearing nor prohibited it from doing so. We emphasize that the prior order "*vacated*"—as opposed to *reversed*—the trial court's judgment awarding damages and remanded for further proceedings "*as necessary*." *Lockhart Trust*, unpub op at 9. In order to understand and clarify the scope of the prior order, we explain what each of these terms mean in the context of the prior opinion.

### 1. VACATE

---

[2] Our Supreme Court has held that a published opinion of this Court "lacks precedential authority" if it "was decided before 1990," citing MCR 7.215(J)(1). *Stegall v Resource Technology Corp*, ___ Mich ___, ___ n 10; ___ NW3d ___ (2024) (Docket No. 165450); slip op at 18 n 10; but see *Davis v Secretary of State*, ___ Mich App ___, ___ n 10; ___ NW3d ___ (2023) (Docket No. 362841); slip op at 9 n 10 (stating that although this Court is not strictly bound by published opinions of this Court decided before November 1, 1990, it should generally follow them under the rule of stare decisis).

First, we vacated the damages award. We did not reverse it. This distinction is significant. We did not hold that the damages award necessarily should have been zero, but rather that the damages award was either unreviewable under the circumstances or must be set aside and reconsidered in light of an underlying substantive error.

We acknowledge that no single Michigan case clearly defines the difference between "vacate" and "reverse." Likewise, no single court rule or statute provides a common definition of the words. But our court rules, statutes, and caselaw all indicate a common distinction consistent with our intent in the prior case: vacate means clearing a prior order for any number of reasons; reverse mean reaching an opposite conclusion or outcome. For example, several of our court rules specify reversal and vacation as distinct alternatives. See, e.g., MCR 2.610(C)(1); MCR 2.612(C)(1)(e); MCR 3.221(I)(1); MCR 6.106(H)(1); MCR 6.419(E); MCR 7.214(E)(1); MCR 7.215(H); MCR 9.120(B)(1). Likewise, some statutes also provide for reversal and vacation as distinct alternatives. See, e.g., MCL 552.22401(2)(h); MCL 600.6072(1)(b); MCL 691.1754(1)(b) and (c); MCL 791.83(1) and (3). Moreover, different words generally have different meanings. See *Bauserman v Unemployment Ins Agency*, 503 Mich 169, 184 n 10; 931 NW2d 539 (2019).

Our Supreme Court's holdings also reflect a distinction between reverse and vacate. See, e.g., *Batista v Office of Retirement Services*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 166305); slip op at 9-17 (reversing a portion of this Court's analysis on the basis that this Court failed to discern and consider a statutory definition; vacating part of this Court's holding based on an insufficient record under the circumstances); *People v Guyton*, 511 Mich 291, 297, 303-306; 999 NW2d 393 (2023). For example, in *People v Guyton*, our Supreme Court reversed part of this Court's opinion that had affirmed the trial court's denial of a defendant's request to withdraw a guilty plea, holding that the denial was erroneous because of an omission committed by the prosecutor. *Guyton*, 511 Mich at 303-306. Our Supreme Court vacated the remainder of this Court's opinion and remanded to permit the defendant an opportunity to withdraw the plea. *Id*. at 307-308. Put differently, our Supreme Court reversed, i.e., said our analysis was wrong, and vacated, i.e., cleared the effect of the order so the trial court could have a blank slate.

This Court's holdings have also recognized this distinction. See, e.g., *Planet Bingo, LLC v VKGS, LLC*, 319 Mich App 308, 323-330; 900 NW2d 680 (2017) (*reversing* a trial court's discovery order, reasoning that the trial court abused its discretion by limiting the scope of discovery; *vacating* the trial court's grant of summary disposition, reasoning that the grant seemed proper on its face but that the record did not permit this Court to determine whether the grant was actually valid). For example, in *Bank of America, NA v Fidelity Nat'l Title Ins Co*, 316 Mich App 480, 526; 892 NW2d 467 (2016), this Court held that the lower court erred by granting and/or denying several motions for summary disposition because the trial court committed substantive analytical errors. We therefore reversed the summary disposition orders. *Id*. But we vacated the trial court's orders granting a case evaluation award and attorney fees because those orders were premised on the erroneous grants of summary disposition and therefore were not properly reviewable. *Id*.

In each case, we understood that reversing and vacating accomplished different objectives. In each case, we reversed a decision or ruling that was substantively incorrect. And in each case, we vacated a decision or ruling that was not necessarily correct or incorrect but that either should not have occurred because of some other error or could not be properly reviewed.

We further note that this usage is consistent with more recent editions of *Black's Law Dictionary*, which provide definitions that seem consistent with the actual usage of the words. *Black's Law Dictionary* (8th ed) defines "reversal" as "[a]n appellate court's overturning of a lower court's decision," and "reverse" as "[t]o overturn (a judgment) on appeal." It defines "overrule" as "[t]o rule against, to reject" or "to overturn or set aside (a precedent) by expressly deciding that it should no longer be controlling law." Finally, it defines "vacate" as, in relevant part, "[t]o nullify or cancel; make void; invalidate," and "vacatur" as "[t]he act of annulling or setting aside."

These definitions reflect actual usage because, for example, *Batista* and *Planet Bingo* reversed rulings of lower courts that were incorrect; i.e., the appellate courts overturned those rulings. The same cases vacated rulings of lower courts that were unreviewable or should not have occurred; i.e., the appellate courts nullified or set aside those rulings.

In sum, by using the word "vacate," we merely cleared the prior order. Because we vacated the damages award and did not reverse it, we did not hold that PEL had no damages. Nor did we prohibit the trial court from reconsidering whether PEL suffered any damages.

## 2. AS NECESSARY

Next, we remanded for proceedings "as necessary." See *Lockhart Trust*, unpub op at 9.[3] Like "vacate," no single case provides the definitive meaning of "as necessary," but its meaning in our prior remand order is consistent with this Court's common usage. The overwhelming weight of the authority establishes that, in context, the phrase "as necessary" grants a measure of discretion or authority. Likewise, the overwhelming weight of Michigan authority establishes that when used as part of a grant of authority, "necessary" does not automatically mean strict indispensability. Rather, it conveys some discretion to determine what is "necessary" under the circumstances. But, like "vacate" and "reverse," the specific phrase "as necessary" has not been expressly defined.

Although this Court has not expressly defined the phrase "as necessary," we have implicitly treated it as a grant of discretion. For example, a trial court's power to award attorney fees in a divorce action "only as necessary to enable a party to prosecute or defend a suit" implicates the trial court's discretion. *Hanaway v Hanaway*, 208 Mich App 278, 298; 527 NW2d 792 (1995). Likewise, a court's inherent power to "make such rulings as necessary to promote fairness and justice" also implicates the court's discretion. *Brenner v Kolk*, 226 Mich App 149, 160-161; 573 NW2d 65 (1997). Intuitively, the phrase "as necessary" would seem to function as a restriction on any such exercise of discretion. But specifying "as necessary" would be superfluous unless the lower court possessed some discretion to decide what is, in fact, "necessary." We are not alone in this usage.[4]

---

[3] Recall that we previously "vacate[d] the trial court's judgment awarding damages and remand[ed] for further proceedings as necessary, and consistent with this opinion." *Lockhart Trust*, unpub op at 9.

[4] Other jurisdictions have considered the specific phrase "as necessary" and have largely concluded that "as necessary" connotes a grant of discretion. See, e.g., *Fort Bend Co v US Army Corps of*

In at least one instance, our Supreme Court has used "as necessary" as a grant of discretion. See *In re Macomber*, 436 Mich 386, 390; 461 NW2d 671 (1990).[5] Our Supreme Court considered the word "necessary" in the context of MCL 712A.6, which, as written at the time,[6] gave the probate court jurisdiction over adults under some circumstances and conferred the power to enter orders affecting those adults " 'as in the opinion of the court are necessary for the physical, mental, or moral well-being of a particular' " child under the court's jurisdiction. *In re Macomber*, 436 Mich at 390, quoting MCL 712A.6 (emphasis omitted). The Court also considered several other related statutes and court rules that permitted the probate court to take certain actions that the court considered "necessary." *Id*. at 395-398. Our Supreme Court concluded that this conferred a broad grant of power to the probate court, and the word "necessary" conveyed "to probate courts that they should be conservative in the exercise of their power over adults." *Id*. at 398-399.

To simplify and shorten, our use of the phrase "as necessary," was a grant of authority and discretion. It did not mean absolutely indispensable.

### 3. OMISSIONS FROM OUR PRIOR ORDER

---

*Engineers*, 59 F4th 180, 198 (CA 5, 2023); *Univ of Kentucky v Bunnell*, 532 SW3d 658, 681-682 (Ky, 2017); *New Mexico Attorney General v New Mexico Pub Regulation Comm*, 2015-NMSC-032; 359 P3d 133 (NM, 2015); *In re Estate of Beren*, 321 P3d 615, 618; 2013 COA 166 (Colo App, 2013); *Sierra Club v Jackson*, 396 US App DC 297, 305; 648 F3d 848 ( 2011); *Norris v Emanuel Co*, 254 Ga App 114, 118; 561 SE2d 240 (2002); *Bishop v Iowa State Bd of Pub Instruction*, 395 NW2d 888, 892 (Iowa, 1986); *Travis v Collett*, 218 Minn 592, 595-596; 17 NW2d 68 (1944); but see *Shenago Inc v Dep't of Environmental Protection*, 934 A2d 135, 140 (Pa Commw, 2007) (legislature's amendment of a statute to add the phrase "as necessary" imposed a partial constraint on an administrative agency's discretion). None of those cases are binding, we may consider them persuasive. *Est of Voutsaras v Bender*, 326 Mich App 667, 676; 929 NW2d 809 (2019).

[5] This usage is not new. See *Torrent v Muskegon*, 47 Mich 115, 117-120; 10 NW 132 (1881) (interpreting a municipal charter authorizing the city council to contract for "land necessary for public buildings and cemeteries"; holding that "the necessity" should be "determined by fair municipal discretion"). See also *Detroit & Saline Plank-Road Co v Detroit*, 81 Mich 562; 46 NW 12 (1890) (interpreting provisions of the plank road act of 1848 under which plank road companies were permitted to acquire "necessary" property; holding that the company's authority was not restricted to property that was "indispensably necessary," but rather extended to "all things suitable and proper for carrying into execution the powers granted."); *Moran v Nelson*, 322 Mich 230, 241, 243-244; 33 NW2d 772 (1948).

[6] The statute has since been amended several times. 1996 PA 409; 2004 PA 221; 2018 PA 592. Most of those changes were stylistic: e.g., "shall have jurisdiction" was changed to "has jurisdiction," "provided" was changed to "however," and "child or children" was changed to "juvenile or juveniles." The operative language, "may make orders affecting adults as in the opinion of the court are necessary for the physical, mental, or moral well-being of a particular [child/juvenile] or [children/juveniles] under its jurisdiction," remains the same.

Finally, to further explain our prior order, we emphasize what we did not conclude. The paragraph relevant to what we decided is:

> Robinson testified that his computation of damages encompassed both of his companies. However, it seems clear that PED is the proper party with respect to the damages arising from the temporarily reduced water availability. Again, PED is the operations company, while PEL is merely the land holding company. It was PED rather than PEL that executed the leases with Laracha Farms to mitigate the losses. And PEL's motion to add PED as a party in order to conform to the proofs after Robinson's testimony was seemingly a tacit admission that PED is the party that suffered damages. [*Lockhart Trust*, unpub op at 8-9.]

We used the word "seems" and "seemingly," commenting on what the record evidence showed and what PEL's trial strategy implied—not, in contrast, rendering a formal *determination* that PEL did not *actually* suffer any damages. In other words, we did not hold that PEL necessarily suffered no damages, but that PEL could not establish that it suffered any damages on this record. That conclusion is consistent with the second relevant statement of our holding, that "the trial court's award of damages is speculative because there is no basis in the record evidence to identify the amount of damages sustained by PEL alone." *Id*. at 9. The fact that there was no basis in the record to identify PEL's damages does not necessarily mean that such evidence cannot possibly exist.

We did not simply hold that the trial court erred by awarding damages. Rather, we stated "that the trial court erred by awarding damages sustained, at least in part, by PED." *Id*. at 9. Especially when considered in context of the holding that the record did not permit identification of "the amount of damages sustained by PEL alone," this is a holding that PEL is not entitled to recover any damages it might have shared with PED in suffering or damages on the basis of the evidence then in the record. Once again, it is not a holding that PEL necessarily suffered no damages, but rather that PEL may only recover damages—if any—if PEL *alone* suffered those damages.

Finally, we "express[ed] no opinion on the viability of PED bringing a new suit to recover its damages." *Id*. at 9 n 7. On remand, the parties and the trial court attempted to discern a holding out of that statement, and the trial court concluded that it was a tacit holding "that a new suit is required to determine the viability of the damages claim by PED." But we specifically stated that we were not expressing any opinion on the topic, and we certainly did not state that PED was necessarily precluded from reopening the proofs in an effort to show that it sustained its own damages.

In sum, we held that PEL did not establish any damages of its own on the record that existed at the time of the prior appeal. Although we commented on what the evidence suggested, we did not hold that PEL necessarily had no damages that it could have suffered. With this clarification, we turn to the trial court's compliance with that order.

## C. THE TRIAL COURT ABUSED ITS DISCRETION BY FAILING TO RECOGNIZE ITS DISCRETION ON REMAND

With clarification of the scope of our prior holding, we now turn to the trial court's compliance with that holding and mandate. On remand, the trial court erred by failing to recognize the extent of its authority. This necessarily resulted in an abuse of discretion.

Our prior opinion established that PEL did not prove that it suffered any compensable damages on the existing record. We did *not* hold that PEL necessarily did not suffer any damages. We did not order the trial court to hold any particular hearing or to reopen the proofs, so the trial court was not obligated to do so. We did not order the trial court to engage in the ministerial task of simply entering an order awarding no damages to PEL. Compare *Int'l Business Machines*, 316 Mich App at 349-350 (concluding that our Supreme Court gave the trial court no discretion, but rather constrained it "simply to perform the nondiscretionary ministerial task of entering judgment in favor of [the plaintiff taxpayer]") with *Law Offices of Jeffrey Sherbow*, ___ Mich App at ___; slip op at 1-2, 5 (concluding that the trial court had discretion to consider motions for summary disposition after our Supreme Court vacated a jury verdict regarding one claim at issue). Rather, we ordered that the trial court was authorized to conduct further proceedings "as necessary."

Something similar happened in *Law Offices of Jeffrey Sherbow*. There, our Supreme Court vacated a jury verdict regarding one claim in the case because of an erroneous jury instruction, and so it ordered a new trial as to that one claim. *Id*. at ___; slip op at 1-2, 5. On remand, "the parties filed a number of motions," including a motion for summary disposition and motions in limine seeking to preclude relitigation of certain matters under the doctrine of collateral estoppel. *Id*. at ___; slip op at 6, 9. The trial court denied those motions because it had been ordered to hold a new trial and "was powerless to limit the scope of that new trial." *Id*. at ___; slip op at 6, 10. We disagreed and held "that a trial court's consideration of a motion for summary disposition is not inconsistent with an appellate court's remand for a new trial," reasoning that the purpose of summary disposition "of wanting to avoid wasting time and resources when there is no factual dispute is not abrogated because a matter has been remanded." *Id*. at ___; slip op at 7-8. We further reasoned that "when an appellate court orders a new trial, that includes all phases of trial, including all pretrial matters," so the remand order for a new trial did not necessarily preclude the trial court from applying the doctrine of collateral estoppel. *Id*. at ___; slip op at 10.

Similarly, here, a correct interpretation of our remand order is that the trial court had the discretion to decide whether (or not) to reopen the proofs as to damages suffered by PEL alone. The trial court necessarily abused its discretion by failing to recognize that it had the discretion to reopen the proofs. See *Hein*, 337 Mich App at 116. We therefore must remand again for the trial court to exercise that discretion.

To avoid further confusion on remand, we emphasize that the trial court need not reopen proofs. When deciding whether to reopen proofs, trial courts may consider whether the party was previously diligent and whether the party would gain an unfair advantage. *Serijanian*, 7 Mich App at 281. The trial court might consider that PEL had a bite at the apple and must live with the litigation strategy that it chose. The trial court could conclude that our observation that PEL had

seemingly admitted that only PED had suffered damages was an accurate assessment.[7]  Simply put, on remand, the trial court has discretion to reopen the proofs.

## IV.  CONCLUSION

We vacate the trial court's order and remand for the court to exercise the discretion we originally granted.  Our prior remand order vacated the trial court's award of damages and did not reverse it.  This was a holding that the award should not have been made under the circumstances rather than a holding that the trial court was necessarily required to enter an order denying an award of damages.  Our prior opinion held that PEL had not established that it had suffered any damages of its own, and therefore any compensable damages, on the basis of the existing record, not that PEL necessarily did not suffer any damages or was precluded from proving any such damages.  Our prior remand order for proceedings as necessary did not constitute an order for the trial court to hold any particular hearings or to reopen the proofs, but it also did not constitute a prohibition against holding an evidentiary hearing or reopening the proofs.  In short, the trial court had discretion regarding whether to reopen the proofs.  The trial court likely would not have abused its discretion by declining to do so, but it necessarily abused that discretion because it did not recognize that it had the discretion and therefore did not actually exercise that discretion.  We therefore vacate the trial court's order and remand for the trial court to exercise its discretion.  We do not retain jurisdiction.

/s/ Stephen L. Borrello
/s/ Noah P. Hood
/s/ Adrienne N. Young

---

[7] As previously noted, PEL's memorandum cited documents supposedly showing that PEL rented the property at a reduced rate because of the lack of water, but those documents are rental agreements with PED rather than with PEL; the trial court might regard those documents as essentially disproving the point PEL was attempting to make.  In short, it is impossible to say, at this time, that the trial court would have abused its discretion by declining to reopen the proofs if the trial court had actually exercised that discretion.

-14-